UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| MELANIE DAVIS,<br><br>*Plaintiff*,<br><br>v.<br><br>72ND CROSSING LLC,<br><br>*Defendant* | Case No. _____<br><br>**COMPLAINT**<br><br>**Injunctive Relief Sought** |

Plaintiff Melanie Davis, by and through the undersigned counsel, brings this action against 72nd Crossing LLC, a Nebraska limited liability company, for violations of the Americans With Disabilities Act, 42 U.S.C. § 12181, *et seq.* (the "ADA") and its implementing regulations, and alleges as follows:

## INTRODUCTION

1. Plaintiff brings this civil rights action against Defendant for failing to design, construct, and/or own or operate facilities that are fully accessible to, and independently usable by, persons with disabilities.

2. Defendant owns and operates the multi-tenant commercial buildings known as "72nd Crossing", which to the extent was constructed and first occupied after January 26, 1993 or was altered after January 26, 1993 was required to be designed and constructed to be readily accessible to persons with disabilities. To the extent "72nd Crossing" was not constructed or altered before January 26, 1993, it was required to remove barriers to access to the extent barrier removal was readily achievable. "72nd Crossing" contains architectural barriers to accessibility.

3. The violations alleged in this complaint occurred at "72nd Crossing", located at 715 S 72nd Street, Omaha NE 68114.

4. Defendant's failure to provide equal access to "72nd Crossing" violates the mandates of the ADA to provide full and equal enjoyment of a public accommodation's goods, services, facilities, privileges, and advantages.

5. Defendant's conduct constitutes an ongoing and continuous violation of the law.

6. Accordingly, Plaintiff seeks a declaration that Defendant's facilities violate federal and an injunction requiring Defendant to make modifications to the facilities so that they are fully accessible to, and independently usable by, individuals with disabilities. Plaintiff further requests that the Court retain jurisdiction over this matter for a period to be determined to ensure that Defendant continues to comply with the relevant requirements of the ADA.

## JURISDICTION AND VENUE

7. Jurisdiction of this Court arises under 28 U.S.C. §§ 1331 and 1343(a)(3). This action includes federal law claims brought pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181–12189. The Court has the jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed R. Civ. P. 57.

8. Venue in this judicial district is proper because Defendant is located and transacts business within this judicial district and has sufficient contacts to be subject to personal jurisdiction in this judicial district, and because this is the judicial district in which the acts and omissions giving rise to the claims occurred.

## PARTIES

9. Plaintiff Melanie Davis is a resident of Omaha, Nebraska. Plaintiff Davis grew up in Omaha, Nebraska and lived there until she moved to Minnesota in 2005. While living in Minnesota, she visited Omaha many times, including five visits in 2016-2017. She moved back to Omaha in 2017, where she now resides.

10. Plaintiff Melanie Davis suffers from, and all times relevant hereto has suffered from, Cerebral Palsy, a condition that substantially limits her ability to walk and stand, and is therefore a legal disability as defined by the ADA, 42 U.S.C. § 12102(2). Plaintiff is therefore a member of a protected class under the ADA, under the regulations implementing the ADA set forth at 28 C.F.R. § 36.101 *et seq*. As a person with a disability, Plaintiff Davis has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

11. Defendant 72nd Crossing LLC, is the owner and lessor of the real property and improvements which are the subject of this action, the multi-tenant commercial buildings known as "72nd Crossing", a place of public accommodation within the meaning of the ADA, located at the street address of 715 S 72nd Street, Omaha NE 68114.

## FACTUAL BACKGROUND

12. Plaintiff Davis attempted to patronize the multi-tenant commercial buildings known as "72nd Crossing" in Omaha, Nebraska on February 12, 2018. Plaintiff has also visited "72nd Crossing" on several other occasions, including at least as far back as January 2016. "72nd Crossing" has tenant businesses such as Dunkin' Donuts, Firehouse Subs, Michael's, PetSmart, Russell Stover, and Big Lots. On her various visits to "72nd Crossing" Plaintiff has patronized or attempted to patronize several of the tenant businesses including Firehouse subs, Dunkin' Donuts and PetSmart.

13. When Plaintiff visited "72nd Crossing" she found approximately 426 total parking spaces in the customer parking lot and 9 parking spaces reserved through paint or signage for people who have disabilities.

14. Plaintiff found 0 spaces in the "72nd Crossing" customer parking lot reserved as van accessible spaces.

15. The curb ramp providing access to the entrance of Dunkin' Donuts opened partially into a parking space.

16. The curb ramp providing access to the entrance of the Dunkin' Donuts lacked a landing at the top of the ramp.

17. Climbing the curb ramp between the reserved parking spaces and the Dunkin' Donuts store entrance required turning on the ramp run, creating cross slopes.

18. The parking space reserved for persons with disabilities on the southwest corner of the "72nd Crossing" customer parking lot by the Russell Stover store had an adjacent access aisle, but the curb ramp extended into the access aisle.

19. The adjacent access aisle and curb ramp were both obstructed by plowed snow on the day of Plaintiff's 2018 visit.

20. The curb ramp providing access to the entrances of tenant businesses near Big Lots had a broken surface.

21. 1 parking space reserved for persons with disabilities nearby by Michaels and PetSmart had a narrow adjacent access aisle.

22. Photographs in Exhibit A to this Complaint depict the "72nd Crossing" customer parking lot on the day of Plaintiff's February 12, 2018 visit.

23. In light of the architectural barriers at "72nd Crossing", Plaintiff is deterred from visiting "72nd Crossing" in the future. Plaintiff Davis intends to return to "72nd Crossing", but these architectural barriers deter her from doing so. She plans to return and

patronize "72nd Crossing" when she learns that the premises have been made fully accessible to persons who use wheelchairs for mobility.

24. Plaintiff is a resident of Omaha, Nebraska, and she plans to continue visiting local Omaha businesses in the future and would enjoy being able to patronize tenant businesses of Defendant's multi-tenant commercial buildings.

25. Plaintiff attempted to access Defendant's premises but could not do so independently on a full and equal basis because of her disabilities, due to the physical barriers to access and violations of the ADA that exist at Defendant's premises. As a result of Defendant's non-compliance with the ADA, Plaintiff cannot independently access the facilities and/or is excluded from full and equal enjoyment of the goods, services, privileges, advantages, and/or accommodations offered therein.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

26. On July 26, 1990, President George H.W. Bush signed into law the ADA, 42 U.S.C. § 12101, *et seq.*, a comprehensive civil rights law prohibiting discrimination on the basis of disability. In its findings, Congress determined that, among other things:

   a. Some 43 million Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole grows older;

   b. Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, discrimination against individuals with disabilities continues to be a serious and pervasive social problem;

   c. Discrimination against individuals with disabilities persists in such critical areas as employment, public housing accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

    d. Individuals with disabilities continually encounter various forms of discrimination; and

    e. The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our society is justly famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

42 U.S.C. § 12101(a)(1)–(3), (5), (9).

27. Congress explicitly stated that the purpose of the ADA was to:

    a. Provide a clear and comprehensive mandate for the elimination of discrimination against individuals with disabilities;

    b. Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

    c. Invoke the sweep of congressional authority, including the power to enforce the Fourteenth Amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by individuals with disabilities.

42 U.S.C. § 12101(b)(1), (2), (4).

28. Title III of the ADA prohibits discrimination in the activities and facilities of places of public accommodation, and requires places of public accommodation to comply with ADA standards and to be readily accessible to, and independently usable by, individuals with disabilities. 42 U.S.C. § 12181–89.

29. The ADA provided places of public accommodation one and one half years from its enactment to implement its requirements. The effective date of Title III of the

ADA was January 26, 1992 (or January 26, 1993 if a business had 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 2181; 28 C.F.R. § 36.508(a).

30. Pursuant to the mandates of 42 U.S.C. § 12134(a), the Department of Justice ("DOJ") promulgated federal regulations to implement the requirements of Title III of the ADA, which are codified at 28 C.F.R. Part 36. Appendix A of the 1991 Title III regulations (republished as Appendix D to 28 C.F.R. Part 36) contains the ADA Standards for Accessible Design, which were based upon the ADA Accessibility Guidelines ("1991 ADAAG") published by the Access Board on the same date. Public accommodations were required to conform to these regulations by January 26, 1992 (or January 26, 1993 if a business had 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181, *et seq.*; 28 C.F.R. § 36.508(a).

31. In 1994, the Access Board began the process of updating the 1991 ADAAG by establishing a committee composed of members of the design and construction industries, the building code community, and State and local government entities, as well as individuals with disabilities.

32. In 1999, based largely upon the report and recommendations of the advisory committee, the Access Board issued a notice of proposed rulemaking to update and revise the 1991 ADAAG.

33. The Access Board issued final publication of revisions to the 1991 ADAAG on July 3, 2004.

34. On September 30, 2004, the DOJ issued an advance notice of proposed rulemaking to begin the process of adopting the 2004 ADAAG revisions.

35. On June 17, 2008, the DOJ published a notice of proposed rulemaking covering Title III of the ADA.

36. The extended process of revising the 1991 ADAAG culminated with the DOJ's issuance of the 2010 Standards for Accessible Design ("2010 Standards"). The 2010 Standards incorporated the revised 2004 ADA Accessibility Guidelines ("ADAAG"), as well as the requirements contained in subpart D of 28 C.F.R. Part 36. The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010. The 2010 Standards became effective on March 15, 2011.

## FACTUAL ALLEGATIONS

37. Defendant has discriminated against Plaintiff on the basis of her disabilities by failing to comply with the requirements of the ADA and the ADAAG with regard to "72nd Crossing". A specific, though not exclusive, list of unlawful physical barriers and ADA violations present at "72nd Crossing" which limit the ability of persons in wheelchairs to access the facilities and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis, includes the following:

   a. The "72nd Crossing" customer parking lot had 426 total parking spaces but had fewer than 9 parking spaces reserved for persons with disabilities that complied with ADAAG 502, in violation of ADAAG 208.2. Plaintiff requires complaint accessible parking spaces to ensure she can park safely, make a safe transfer between her vehicle and wheelchair, and travel safely between the parking lot to the building entrance.

   b. The "72nd Crossing" customer parking lot had 0 parking spaces reserved as van accessible spaces, in violation of ADAAG 208.2.4 and 502.6.

   c. The curb ramp that provided access to the entrance of Big Lots had a broken, unstable surface, in violation of ADAAG 206.2.1, 403.2, and 302.1. Traveling on ramps with broken surfaces creates the risk of a fall or damage to the wheelchair.

d. The 1 parking space reserved for persons with disabilities by Russell Stover had an adjacent access aisle, but the curb ramp providing access to Russell Stover extended into the aisle, in violation of ADAAG 406.5 and 502.4. Plaintiff requires a level surface to make a safe transfer between her vehicle and her wheelchair.

e. The curb ramp and the access aisle adjacent to the parking space reserved for persons with disabilities by Russell Stover were filled with snow on the day of Plaintiff's visit making them unusable and showing that "72nd Crossing" had failed to make reasonable modifications in policies, practices, or procedures to ensure accessibility, in violation of 28 C.F.R. § Sec. 36.302.

f. 1 parking space in the customer parking lot reserved for persons with disabilities nearby Michael's and PetSmart lacked an adjacent access aisle at least 5 feet in width, in violation of ADAAG 502.3. Plaintiff requires an access aisle to make a safe transfer between her vehicle and her wheelchair.

g. The curb ramp providing access between the parking space reserved for persons with disabilities by Dunkin' Donuts and the entrance of Dunkin' Donuts lacked a landing at the top of the curb ramp, in violation of ADAAG 406.4. Landings make ramps easier to use for Plaintiff.

h. The curb ramp providing access between the parking space reserved for persons with disabilities by Dunkin' Donuts and the entrance of Dunkin' Donuts was partially blocked by a parking space, in violation of ADAAG 502.7.

i. The curb ramp providing access between the parking space reserved for persons with disabilities by Dunkin' Donuts and the entrance of Dunkin'

   Donuts required Plaintiff to turn on the ramp run rather than a landing, creating cross slopes steeper than 1:48, in violation of ADAAG 405.3 and 406.4. Changing direction on a ramp run can be difficult for Plaintiff, who uses a wheelchair for mobility, particularly when ice or snow may present difficulties, or when Plaintiff is carrying items or is traveling with her service dog.

 j. The parking spaces reserved for persons with disabilities in the "72nd Crossing" customer parking lot complying with ADAAG 502 were not dispersed on the shortest accessible routes to the accessible entrances of tenant businesses, in violation of ADAAG 208.3.1. Plaintiff uses a wheelchair for mobility and requires accessible routes.

38. The above listing is not to be considered all-inclusive of the barriers and violations of the ADA encountered by Plaintiff or which exist at "72nd Crossing". To qualify as an accessible parking structure, and for a parking space to qualify an accessible parking space, the space must be located on an accessible route, the route must be the shortest accessible route, the space must be marked by appropriate signage, the space must be flanked by an access aisle, and the space and access aisle must comply with sloping requirements. ADAAG 206; 208; 216, Chapter 4 including but not limited to 402, 403, 404, 405, and 406; and 502.

39. Plaintiff demands removal of all access barriers listed, without creating new barriers or deviations from the 2010 standards.

40. In order to fully remedy the discriminatory conditions, Plaintiff requires an inspection of "72nd Crossing" in order to photograph and measure all such barriers to access and violations of the ADA and the ADAAG.

41. Compliance with the ADA standards, and the ADAAG is required by 42 U.S.C §§ 12182 and 12183 to the extent the facility was designed and constructed or altered after January 26, 1993, and the violations to the ADAAG requirements are not a result of compliance being structurally impracticable. 28 C.F.R § 36.401(a)(1).

42. In the alternative, to the extent any architectural elements were constructed prior to that date, compliance with the ADA standards and the ADAAG is required by 42 U.S.C § 12182(b)(2)(A)(iv) because removal of architectural barriers is readily achievable. Compliance with the ADA standards and the ADAAG is readily achievable by Defendant due to the lack of difficulty and low cost of remedying the above-listed barriers. Some of the above-listed violations can be remedied through the same measures prescribed by federal regulation as examples of modifications that are "readily achievable", including, but not limited to, creating accessible parking spaces. 28 C.F.R. § 36.304(b).

43. Compliance is also readily achievable due to the significant assistance available to businesses. Section 44 of the IRS Code allows a Disabled Access tax credit for small businesses with 30 or fewer full-time employees or with total revenues of $1 million or less, which is intended to offset the cost of undertaking barrier removal and alterations to improve accessibility. Section 190 of the IRS Code provides a tax deduction for businesses of all sizes for costs incurred in removing architectural barriers, up to $15,000. *See* ADA Update: A Primer for Small Business, http://www.ada.gov/regs2010/smallbusiness/smallbusprimer2010.htm#tax (Mar. 16, 2011).

44. As a person with a disability, Plaintiff has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

45. Without injunctive relief, Defendant's failure to remove accessibility barriers will continue to cause injury to Plaintiff, who will continue to be unable to independently access "72nd Crossing" and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis, in violation of her rights under the ADA.

## FIRST CAUSE OF ACTION
**Violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101** *et seq.*

46. Plaintiff incorporates and realleges the above paragraphs.

47. Section 302(a) of Title III of the ADA, 42 U.S.C. §§ 12101 *et seq.*, provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

48. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that is equal to the opportunities afforded to other individuals.

49. Defendant has discriminated against Plaintiff and others in that it failed to make its place of public accommodation fully accessible to persons with disabilities on a full and equal basis in violation of 42 U.S.C. § 12182(a) and the regulations promulgated thereunder, including the ADAAG, as described above. Plaintiff has been denied full and equal access to "72nd Crossing" and/or has been denied the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations on a full and equal basis.

50. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. Defendant's violations of the ADA and ADAAG are ongoing.

51. Defendant has failed to remove architectural barriers to full and equal access by Plaintiff, even though removing the barriers was required and is readily achievable.

52. Plaintiff plans to visit "72nd Crossing" again in the near future. Plaintiff is without adequate remedy at law, has suffered and is suffering irreparable harm, and reasonably anticipates that she will continue to suffer irreparable harm upon her planned return visit to "72nd Crossing" unless and until Defendant is required to remove the physical barriers to access and ADA violations that exist at Defendant's place of public accommodation, including those set forth specifically herein.

53. This Court has authority under 42 U.S.C. § 12188 to grant Plaintiff injunctive relief, including an order requiring Defendant to make "72nd Crossing" readily accessible to and independently usable by individuals with disabilities to the extent required by the ADA and ADAAG, and/or to close "72nd Crossing" until such time as Defendant cures the access barriers.

54. Plaintiff has retained the undersigned counsel for the filing and prosecution of this action, and is entitled to recover reasonable attorneys' fees, litigation expenses and costs from Defendant, pursuant to 42 U.S.C. §§ 12205, 12117, and 28 C.F.R. § 36.505.

**WHEREFORE**, Plaintiff respectfully requests:

    a. Plaintiff demands a trial in Omaha, Nebraska.

    b. That the Court issue a Declaratory Judgment that determines that Defendant's facilities, at the commencement of the instant suit, are in violation of

       Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and the relevant implementing regulations including the ADAAG.

c. That the Court award nominal damages.

d. That the Court issue a permanent injunction, pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.504(a), enjoining Defendant from continuing its discriminatory practices; including an order directing Defendant to remove all barriers to the maximum extent feasible or in the alternative make all readily achievable alterations to its facilities so as to remove physical barriers to access and make its facilities fully accessible to and independently usable by individuals with disabilities to the extent required by the ADA; and also including an order requiring Defendant to make all reasonable modifications in policies, practices or procedures necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities on a full and equal basis. Plaintiff further demands that the permanent injunction direct Defendant to removal all barriers without creating new barriers to accessibility as defined by the 2010 standards.

e. That the Court award Plaintiff her reasonable attorneys' fees, litigation expenses, and costs of suit pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505, or as otherwise provided by law; and

f. That the Court issue such other relief as it deems just and proper, and/or is allowable under Title III of the ADA.

DATED:  <u>April 30, 2018</u>

                <u>/s/ Padraigin L. Browne</u>
                Padraigin L. Browne (MN Bar # 389962)
                Browne Law LLC
                8530 Eagle Point Blvd, suite 100
                Lake Elmo, MN 55042
                E-mail: paddy@brownelawllc.com
                Phone: (612) 293-4805